IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FRANCISCO DIAZ, | ) | 4:18CV3042 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| JARED M. KELM, both individually and as an agent of Union Tank Car Company, and UNION TANK CAR COMPANY, a company authorized to do business in the State of Nebraska, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter is before the court on a motion for summary judgment that was filed by Defendant Union Tank Car Company ("Union Tank") on October 30, 2019. (Filing 76) Plaintiff, Francisco Diaz ("Diaz") has not responded the motion. The court concludes the motion for summary judgment should be granted because the undisputed facts establish that Defendant Jared Kelm ("Kelm") was not acting within the scope of his employment with Union Tank when he was involved in a motor-vehicle accident with Diaz, and therefore Union Tank cannot be held vicariously liable for Diaz's alleged injuries.

I. UNDISPUTED FACTS

In accordance with the court's local rules, Union Tank has included in its supporting brief "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). While Diaz's failure to respond to the motion for summary judgment within 21 days after service is not, in and of itself, considered a confession of the motion, all "properly referenced material facts in the movant's statement are considered admitted." NECivR 56.1 (b)(1). The court finds the following material facts, as set forth in Union Tank's brief, are properly referenced to affidavits, pleadings, discovery responses, deposition testimony, or other materials, and therefore will be deemed admitted:

1. This lawsuit arises from a motor-vehicle accident that occurred just after midnight on June 6, 2014. Plaintiff Francisco Diaz alleges that this accident was the result of Kelm's negligent operation of a motor vehicle owned by Union Tank. (Amended Complaint, ECF No. 59).

2. Defendant Union Tank is joined in this lawsuit only under a theory of vicarious liability. The only allegation against Union Tank is that, at the time of the motor-vehicle accident, Kelm was allegedly acting within the scope and course of his employment with Union Tank. (ECF No. 59 § 5,6,10)

3. In February 2014, Kelm was hired by Union Tank to repair rail cars. (Ex. 1A, Kelm Depo 27:20-22).[1]

4. Kelm started working for Union Tank in Cleveland, Texas, and then was temporarily assigned with a crew to Hastings, Nebraska. (Ex. 1A, Kelm Depo 30:4-20).

5. In June 2014, Jared Kelm was working in Hastings, Nebraska, for Union Tank. (Ex. 1A, Kelm Depo 27:14-19).

6. Kelm and the crew drove from Cleveland, Texas, to Hastings, Nebraska, in trucks owned by Union Tank. (Ex. 1A, Kelm Depo 30:21-31:15).

7. While in Hastings, the crew stayed in an area hotel. (Ex. 1A, Kelm Depo 47:8-14).

8. The crew was in Hastings, Nebraska, to repair and maintain railcars for Ag Processing, a company that does soybean oil and grain processing. (Ex. 1D, Porter Depo. 10:19-11:2).

9. Everyone on the Hastings, Nebraska crew was allowed to drive Union Tank vehicles to and from the jobsite and for other incidental purposes such as driving to the grocery store or laundromat. (Ex. 1A, Kelm Depo 51:4-7; Ex. 1D, Porter Depo. 16:15-16, 17:19-21).

10. But Kelm had no specific job-related duties that involved driving. Nor did he have any job-related duties that involved socializing at a bar. The

---

[1] Exhibits 1A through 1D are attached to the affidavit of Union Tank's counsel. (Filing 77)

activities Kelm performed were working on valves, changing tires, and welding on rail cars. (Ex. 1A, Kelm Depo 28:2-6). At some point, Kelm also started doing airbrake tests. (Ex. 1A, Kelm Depo 28:10-19).

11. June 6, 2014 was a Friday. (Ex. 1D, Porter Depo. 19:1-2). Kelm does not even remember if he worked that day. (Ex. 1A, Kelm Depo. 62:22-24). That evening, Kelm and some other members of the Hastings, Nebraska crew went bowling. (Ex. 1A, Kelm Depo 62:19-21).

12. At the bowling alley, Kelm consumed alcohol. (Ex. 1A, Kelm Depo 63:23-25).

13. Kelm and others stayed at the bowling alley several hours. (Ex. 1B, Kimmons Depo. 11:14-12:2).

14. At some point after he finished bowling, Kelm and some other crew members went to Slammers, a local bar in Hastings, Nebraska. (Ex. 1A, Kelm Depo 66:18-24).

15. At Slammers, Kelm continued to consume alcohol. (Ex. 1A, Kelm Depo 67:18-22).

16. After leaving Slammers, Kelm returned to the hotel. (Ex. 1A, Kelm Depo 70:14-16).

17. At the time of the accident, Kelm had left the hotel to return to Slammers to retrieve his personal bank card. (Ex. 1A, Kelm Depo 70:20-22).

18. At the precise time of the accident, Kelm was driving to a bar. (Ex. 1A, Kelm Depo 101:9-11).

19. Kelm made the decision to drive a Union Tank truck to Slammers. (Ex. 1A, Kelm Depo 70:23-71:1, 72:4-6).

20. Jacob Belz, another member of the crew, was riding with Kelm back to Slammers at the time of the accident. (Ex. 1A, Kelm Depo 72:10-12, 33:23-34:2).

21. Kelm and Belz had not reached Slammers at the time the accident occurred. (Ex. 1A, Kelm Depo 72:17-18).

22. Kelm understood he was not to be using Union Tank vehicles after consuming alcohol. (Ex. 1A, Kelm Depo 99:20-100:22).

23. Belz understood they were not acting for Union Tank's purposes when using the company vehicle under the circumstances and understood, as a matter of common sense, that they could be fired for using the vehicle under the circumstances. (Ex. 1C, Belz Depo. 71:23-72:42).

24. At the time of the accident, Kelm denies he was going to the bar for any work-related purpose. (Ex. 1A, Kelm Depo 101:16-18). The same was denied by Belz. (Ex. 1C, Belz Depo. 43:1-3).

25. At the time of the accident, Kelm was not being asked or instructed by Union Tank to go to the bar for any work-related purpose. (Ex. 1A, Kelm Depo 101:19-23). Neither was Belz. (Ex. 1C, Belz Depo. 42:22-25).

26. If Kelm had not needed to go back to the bar to get the bank card he left there while drinking, he would not have been driving the Union Tank vehicle at the time of the accident. (Ex. 1A, Kelm Depo 101:25-102:6).

27. The evening when the crew went bowling and to the bar was a Friday. By the time Kelm and Belz left to return to the bar to get Kelm's bank card, it was the early morning hours on a Saturday. (Ex. 1A, Kelm Depo., Depo. Ex. 11 at p. 2).

28. The crew was not scheduled to work that Saturday, and their supervisor had returned to Texas for the weekend by the time Kelm went to bowling and to the bar. (Ex. 1D, Porter Depo. 19:1-5).

29. Kelm received a copy of the Union Tank handbook, which contained the company drug and alcohol policy, had an opportunity to read it, and signed an acknowledgment that he was familiar with it. (Ex. 1A, Kelm Depo 95:2-96:6, Depo. Ex 12). The company drug and alcohol policy forbid any consumption of alcohol while on company business. (Ex. 1A, Kelm Depo., Depo. Ex. 5 at 21-25). Kelm was provided with Union Tank safety rules when he started working for Union Tank, which forbid drinking or possessing alcohol when at work. (Ex. 1A, Kelm Depo 97:21-98:11). It was a violation of Union Tank policy for an employee to drive a company vehicle after consuming alcohol. (Ex. 1D, Porter Depo. 43:12-17).

(Filing 78, pp. 3-7)

## II. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion" Fed. R. Civ. P. 56(a).

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The existence of a mere scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmoving party. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

III. ANALYSIS

Because jurisdiction in this case is based on diversity of citizenship,[2] the court will look to the substantive law of the State of Nebraska, where the accident occurred, in fixing the rights and liabilities of the parties. *See Bern v. Evans*, 349 F.2d 282, 286 (8th Cir. 1965) (diversity case involving motor vehicle accident in Nebraska).

Under Nebraska law, an employer is not vicariously liable for the torts of its employee unless, at the time of the alleged tortious conduct, the employee was acting within the scope of his employment. *See Strong v. K & K Investments, Inc.*, 343 N.W.2d 912, 915 (Neb. 1984) ("[I]n order to sustain a recovery under the doctrine of respondeat superior, the relationship of master and servant must be shown to exist at the time of the injury and with respect to the particular transaction resulting in the alleged tort, and the servant must be shown to be acting within the scope of his employment."). "The conduct of an employee is within the scope of employment if, *but only if*, the conduct is of the kind the employee is employed to perform, occurs substantially within the authorized time and space limits, and is actuated, at least in part, by a purpose to serve the master." *Id.* at 916 (emphasis supplied); *see Johnson v. Evers*, 238 N.W.2d 474, 476 (Neb. 1976) (quoting Restatement (Second) of Agency § 228).

Kelm was hired by Union Tank to repair rail cars, and clearly was not engaged in this activity at the time of the accident. Instead, the undisputed evidence shows that Kelm was driving back to a bar to retrieve his bank card after a night of consuming alcohol on his personal time. Thus, the first factor is not satisfied. *See, e.g., Wood v. Walton*, 855 F. Supp. 2d 494, 502 (D. Maryland 2012) ("Walton was hired as a temporary crane operator to unload coal from a ship.... Driving a car from a bar to his hotel was neither incident to these duties nor conduct he was hired to perform.").

Neither is the second factor satisfied. The accident happened away from Kelm's worksite, after midnight, long after Kelm had last performed work, and long before he was scheduled to perform work again. Kelm's alleged negligence did not occur substantially

---

[2] This action was commenced in the District Court of Adams County, Nebraska, on February 14, 2018, and was removed to federal court by Defendants on March 22, 2018.

within authorized time and space limits. The mere fact that Kelm was living in Nebraska for work reasons at the time of the accident is not sufficient. In jurisdictions that apply Restatement (Second) of Agency § 228, courts have "expressly rejected" the notion that an employee "acts within the scope of his employment every moment of a business trip—no matter how long—merely because the employer provides lodging and transportation." *Id.* at 501 ("The accident occurred while [the employee] was off duty and away from his work site.... That [the employer] provided a rental car and hotel room does not require a different result.... [T]he Court finds persuasive those cases from other jurisdictions that have rejected the concept of perpetual employment during a temporary assignment.").

Finally, and perhaps most importantly, the conduct Kelm was engaged in at the time of the alleged negligence was not actuated, in whole or in part, by a purpose to serve the interests of Union Tank. In fact, Kelm was violating Union Tank's policy by driving a company vehicle after consuming alcohol.[3] Personal entertainment, particularly at a bar, does not serve an employer's purposes, even when the employee is temporarily assigned to a location away from home. *See, e.g., McGonigle v. Whitehawk*, 481 F. Supp. 2d 835, 840 (W.D. Ky. 2007) ("[T]he primary purpose of [the employee] using the vehicle on the evening [in question] was for his own personal benefit, as he had the day off on the evening of the accident, he was driving the vehicle late at night past regular business hours; and the activity he was engaged in prior to the accident was not related to his employment."); *see also Witthauer v. Paxton-Mitchell Co.*, 19 N.W.2d 865, 866 (Neb. 1945) (any presumption that employee, driving employer's motor vehicle when accident occurs, is acting within the scope of his employment, vanishes when rebutted by clear and undisputed evidence that employee was engaged in personal affairs); *Witthauer v. Employers Mut. Cas. Co.*, 32 N.W.2d 413, 415 (Neb. 1948), *overruled in part on other grounds by Arndt v. Davis*, 183 Neb. 726, 163 N.W.2d 886 (1969). "An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is

---

[3] Even if such usage was not expressly prohibited, it would not give rise to vicarious liability. *See* 51 A.L.R.2d 120 § 3 ("An employer who loans his automobile to an employee for the latter's personal use outside of regular working hours is generally not liable, under the ordinary rules of respondeat superior, for the employee's negligent operation of the vehicle during the period of permissive use.").

employed." Restatement (Second) of Agency § 235; *see Bartek v. Glasers Provisions Co.*, 71 N.W.2d 466, 471 (Neb. 1955) ("[A] master who purchases an automobile for the convenience of his servants is not subject to liability when a servant is using it for his own purposes[.]") (quoting Restatement (First) of Agency, § 238).

## IV. CONCLUSION

Union Tank has demonstrated that Diaz is unable to prove any one of the three factors that must be proved under Nebraska law in order to establish that Kelm was acting within the scope of his employment at the time of the accident. As a matter of law, therefore, Union Tank is not liable for Diaz's alleged injuries.

Accordingly,

IT IS ORDERED:

1. Defendant Union Tank Car Company's motion for summary judgment (Filing 76) is granted, and Plaintiff's action against Defendant Union Tank Car Company is dismissed with prejudice.

2. Entry of judgment in favor of Defendant Union Tank Car Company will be deferred pending disposition of the entire case. *See* Fed. R. Civ. P. 54(b).

DATED this 2nd day of December, 2019.

BY THE COURT:

*Richard G Kopf*
Senior United States District Judge